# St. Louis & San. F. R. R. Co. *v.* Musgrove.

### *Action for Injury to Goods.*

(Decided Dec. 19, 1907. 45 South. 229.)

1. *Appeal; Review; Presumptions as to Findings.*—Where a trial is had and judgment rendered in the law and equity court of Walker county by the judge without a jury. on appeal the judgment and findings come to this court without any presumptions of their correctness.—Section 16, L. Acts, 1900-01, p. 116.

[St. Louis & San F. R. R. Co. v. Musgrove:]

2. *Carriers; Damage to Goods; Evidence.*—The evidence in this case examined and held insufficient to warrant a finding that the goods were damaged before being delivered to the draymen of the consignee by agent of defendant at point of destination.

3. *Same; Action; Burden of Proof.*—It was immaterial who carried the burden of proof that the goods were in good order when they were received by the carrier for shipment where the defense interposed conceded that proposition.

APPEAL from Walker Law and Equity Court.

Heard before Hon. T. L. SOWELL.

Action by L. B. Musgrove against the St. Louis & San Francisco Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

BANKHEAD & BANKHEAD, for appellant. Counsel discuss the evidence but cite no authority.

DAVIS & FITE, for appellee. Counsel discuss the evidence but cite no authority.

DENSON, J.—This cause comes here by appeal from a judgment rendered by the Walker county law and equity court without a jury. By section 16 of the act establishing that court (Loc. Laws 1900-01, p. 116) we are in such cases required to review the judgment without any presumption in favor of the court below on the evidence.

The case is one by a shipper against a common carrier of goods for damage to the goods in shipment. It makes no difference in this case who bears the burden of proving the goods were in good condition when they were received by the carrier. The good condition of the goods when received for shipment is conceded by the defense made by the defendant in the trial. That defense is that the goods reached Jasper, the place of destination, in good condition, and were delivered to the agent of the consignee in like good condition. Cary, the defendant's

freight agent at Jasper, testified that he made a careful examination of the crate containing the mirror, in the presence of the drayman of the plaintiff, and that it was in good condition; that the crate was "absolutely intact" —was in first-class condition—and that there was no evidence of breakage; that he delivered the crate containing the mirror to the drayman in that condition; and that when the drayman left the station with the case he was positive, from a careful personal inspection, that the mirror was in first-class condition and not damaged. John Barton, the plaintiff's drayman, or, rather, the drayman employed by him to carry the mirror to its destination in Jasper, testified that he received the crate containing the mirror from Mr. Cary at the depot; that it seemed to be in first-class condition, and 'slid' in from the platform to his dray; and that he did not at the time notice anything wrong with it, nor see nor hear any evidence of the mirror being broken or damaged. He placed another large crate in the dray side by side of the mirror and drove with them to the residence of Mr. Musgrove. No one was with him enroute to Musgrove's. When he reached Musgrove's he turned the crate containing the mirror down to unload it, and heard glass rattling on the inside of the crate. He was then directed to reload the crate and carry it to Mr. Long's residence, and there it was unloaded again. Mr. Cary told him to be careful not to allow the large crate to turn over on the smaller one, as it might injure it. Barton also testified that he kept his foot between the two crates while carrying them to Mr. Musgrove's house, and did not allow them to strike together; that he did not see or hear anything about the crate containing the mirror to indicate that the mirror was broken until he reached Mr. Musgrove's house and turned it down to unload it; that that was the first time it had been turned

[Central of Ga. Ry. Co. v. Merrill & Co.]

over; that they did not turn it down when loading it at the depot. The mirror was not visible while in the crate, nor while the glass was heard rattling at Musgrove's. Its broken condition was not seen until the crate was opened at Mr. Long's.

It appears to us that the preponderance of the evidence shows that the mirror was in good condition when delivered to the drayman. The evidence of Cary is positive in this respect, and the drayman's evidence corroborates it; so that we are contrained to hold that the plaintiff failed to make a case for recovery, and that the court should have rendered judgment in favor of the defendant. Therefore the judgment of the trial court is reversed, and a judgment will be here rendered for the defendant.

Reversed and rendered.

TYSON, C. J., and DOWDELL and SIMPSON, JJ., concur.